**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────

**CRAIG SWEAT,**

                                **Petitioner,**          **05-CV-221**
                                                **(95-CR-232)**

                **v.**


**UNITED STATES OF AMERICA,**

                        **Respondent.**

───────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.  INTRODUCTION**

Craig Sweat (hereinafter "Petitioner") has filed the instant motion pursuant to 28 U.S.C. §

2255 challenging his criminal conviction and sentence.  For the reasons that follow, the motion is

denied and his petition dismissed.

**II.  BACKGROUND**

On June 26, 1995, Petitioner and approximately forty other people were indicted for various

narcotics, weapons, and conspiracy charges arising out of their participation in what has been

referred to as the Joyner Organization. See United States v. Joyner, 201 F.3d 61, 66-68 (2d Cir.

2000)("Joyner I").[1]  Petitioner was charged with conspiracy to distribute cocaine, in violation of 21

───────────────

    [1]  The facts presented in the trials before the Court established that the Joyner Organization (hereinafter
                                                                        (continued...)

1

U.S.C. § 846, and engaging in a continued criminal enterprise ("CCE"), in violation of 21 U.S.C. §

848. Petitioner was tried with six co-defendants in an eight week jury trial from April 2, 1996 to

June 4, 1996.  At the conclusion of the trial, the jury was unable to reach a verdict as to Petitioner or

co-defendant Michael Barrett. A retrial was then held from November 25, 1996 until December 12,

1996, resulting in Petitioner's conviction on all counts. On appeal, the Second Circuit Court of

Appeals affirmed Petitioner's CCE conviction but vacated the drug conspiracy charge. See id. at 67

(citing Rutledge v. United States, 517 U.S. 292 (1996)(holding that a drug conspiracy is a lesser

included offense of a CCE)).  Additional appellate arguments were considered and rejected in a

separate opinion that denied defendants' petition for reargument before the Second Circuit. See

United States v. Joyner, 313 F.3d 40, 46-48 (2d Cir. 2002)("Joyner II"). Petitioner's petition for a

writ of certiorari to the United States Supreme Court was denied on February 23, 2004. Barrett v.

U.S., 540 U.S. 1201 (2004).

Petitioner's co-defendant in the criminal trial, Michael Barrett, attempted to file a "joint"

Section 2255 petition on behalf of himself and Sweat in June of 2004, and/or to "consolidate" the

---

[1](...continued)

"Organization") was initially formed in 1989 by Archie Joyner and sold narcotics at several bars and strip clubs in Binghamton, New York. Joyner, the ringleader and subsequently-turned-government witness, would pay people within the organization to mule cocaine from his contacts in New York City to the Binghamton area, and the cocaine would then be sold by other associates within the organization at various bars. The organization initially began selling drugs at several local bars in Binghamton including the Sail Inn, Begies and Kennedy's Corners. As business grew, however, so did the territory the organization sought to cover, and soon they were selling drugs at other bars in Binghamton including Amp, Sheions and Choices.

Petitioner did not become an active member of the organization until 1994. Prior to this time, Petitioner served as the lieutenant to co-defendant Michael Barrett.  Barrett operated another gang in the Binghamton area that also sold drugs within the same territory as the Organization. Frequently, the Organization and Barrett's crew would clash over drug customers and territory, which in turn upset "business" by attracting additional police attention. In an effort to relieve some of the tension between the various groups and improve profits, Barrett  agreed to join the Organization in or about February 1994. Soon thereafter, in April 1994, Barrett and Petitioner  began selling drugs in Choices, one of Joyner's bars that Barrett ran. Sweat, and another government witness, Shatima Turner, would sell cocaine, and in some instances also transport shipments from New York City to Binghamton.

two petitions. See Barrett v. United States, 3:04-CV-848, dkt. #s 2-4; Sweat v. United States, 3:04-CV-849, dkt. # 1 (Petition filed by Barrett on behalf of himself and Sweat). The motion to consolidate the two actions was denied by the Court. Id. dkt. # 9. Because Sweat had not signed any of the documents submitted on his original Section 2255 motion, and because a *pro se* litigant cannot represent another *pro se* litigant, Petitioner's original Section 2255 motion was dismissed without prejudice to renewal. See Sweat v. United States, 3:04-CV-849, dkt. # 9.  Petitioner subsequently filed the instant Section 2255 motion challenging his conviction and sentence on a number of grounds as discussed more fully below.

## III.  DISCUSSION

### A.  Denial of Due Process  - Brady Violation

Petitioner's first argument is that he was denied due process because the Government committed a Brady violation during his prosecution by failing to advise him that one of its witnesses, Shatima Turner, had been involved in other criminal activity in 1996. Pet. Mem. L. pp. 4-10; see Brady v. Maryland, 373 U.S. 83 (1963).  This precise issue was addressed and rejected by this court on a Rule 33 motion, see March 11, 1998 Mem. Dec. & Ord., dkt. # 1693 in 95-cr-232 (attached as dkt. # 4-3 in the instant case), and by the Second Circuit on Petitioner's direct appeal. Joyner I, 201 F.3d at 82.[2]  It is well settled that a § 2255 petition cannot be used to "relitigate

---

[2] In this regard, the Second Circuit wrote:

In May 1997, five months after Barrett and Sweat's second trial, Shatima Turner--the government's key witness at Barrett and Sweat's retrial--was indicted on federal drug trafficking charges.  Barrett and Sweat filed a motion for a new trial on the ground that the government had suppressed the evidence of her 1996 drug crime.  The court denied the motion for a new trial, finding that the prosecutor did not know of Turner's drug crime during the retrial and that he disclosed what evidence he had prior to trial.  On appeal, Barrett and Sweat again claimed that, at the time of their retrial, the government must have known that Turner was the target of an ongoing investigation and that its failure to disclose

(continued...)

questions which were raised and considered on direct appeal." <u>United States v. Sanin</u>, 252 F.3d 79,

83 (2d Cir. 2001)(quoting <u>Cabrera v. United States</u>, 972 F.2d 23, 25 (2d Cir. 1992)); <u>see</u> <u>United</u>

<u>States v. Perez</u>, 129 F.3d 255, 260 (2d Cir. 1997)("A § 2255 motion may not relitigate issues that

were raised and considered on direct appeal."). "Reconsideration is permitted only where there has

been an intervening change in the law and the new law would have exonerated a defendant had it

been in force before the conviction was affirmed on direct appeal." <u>Chin v. United States</u>, 622 F.2d

1090, 1092 (2d Cir. 1980). Furthermore, new intervening law must "break new ground" or bring

with it a "new obligation on the States or Federal Government." <u>Sanin</u>, 252 F.3d at 84 (quoting

<u>Teague v. Lane</u>, 489 U.S. 288, 300 (1989)).  "If a petitioner raises an issue that was addressed on

direct appeal, the Court may find it procedurally barred in a subsequent Section 2255 motion."

<u>Graff</u>, 269 F. Supp.2d at 78 (citing <u>Sanin</u>, 252 F.3d at 83).

 Since there has been no intervening change in applicable law, Petitioner attempts to sidestep

the obvious procedural bar to this claim by arguing that he has obtained "new evidence" that a due

process violation occurred. He argues that this "new evidence" was unavailable at the time of the

appeal and, therefore, the claim is not procedurally barred. In this regard, he presents an affidavit

from Shatima Turner that asserts, *inter alia*, that during a proffer session with the prosecution in the

<u>Joyner</u> case she was "warned by one of the agents that an investigation revealed that [she] was

continuing [her] criminal activity and that [she] should stay out of trouble." Turner Aff. ¶ 12.

Petitioner also submits an affidavit from another convicted drug dealer, Junior Frederick.  Frederick

---

[2](...continued)
this information constitutes reversible error.  However, we see no such error.  The prosecutor's
affidavit stated that he did not know of Turner's 1996 drug crime at the time of Barrett and Sweat's
retrial, and the court was entitled to credit that affidavit.

<u>Joyner I</u>, 201 F.3d at 82.

was charged (and convicted) in an indictment filed in 1997, 97-cr-146, with distribution of cocaine and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  One of Frederick's co-defendants was Shatima Turner.  In Frederick's affidavit (which was actually submitted in Michael Barrett's Section 2255 action), Frederick asserts that he believes that the prosecutor in Petitioner's case knew that Turner was involved in drug activities in the summer of 1996 because: (1) Frederick was supposedly told by the prosecutor during plea negotiations that "110 Clinton street was under surveillance during the summer of 1996;" and, (2) his plea agreement references a drug  conspiracy with, *inter alia*, Shatima Turner, that began in "the summer of 1996."  The Government has asserted that it disclosed what it knew about Shatima Turner at the time of Petitioner's trial, and that Turner's allegations are false.

"[A] Section 2255 motion is not a substitute for direct appeal." Graff v. United States, 269 F. Supp.2d 76, 78 (E.D.N.Y. 2003)(citing United States v. Frady, 456 U.S. 152, 165 (1982); United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998)).  Accordingly, "Section 2255 claims not raised on direct review are procedurally barred unless they raise constitutional or jurisdictional claims, or result in a 'complete miscarriage of justice.'" Johnson v. United States, 313 F.3d 815,  817 (2d Cir. 2002)(quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)). "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998)(citing Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993)); see Arroyo v. United States, 2002 WL 662892, at * 2 (S.D.N.Y. April 22, 2002)(same)(citing Amiel

v. United States, 209 F.3d 195, 198 (2d Cir. 2000)).[3]

To demonstrate cause, a petitioner must be able to show that the factual basis for a claim was not reasonably available, despite the exercise of reasonable diligence. United States v. Helmsley, 985 F.2d 1202, 1205-08 (2d Cir. 1993). The "cause" must be "something *external* to the petitioner, something that cannot fairly be attributed to him ....," Coleman v. Thompson, 501 U.S. 722, 753 (1991)(emphasis in original), and something that would have changed the outcome of the proceeding. See Beras v. U.S., 2005 WL 2660397 (2d Cir. 2005)(unreported)(Petitioner "bears the burden of demonstrating that the evidence is genuinely "'new,'" i.e., that it was "'discovered after trial'" and "'could not, with the exercise of due diligence, have been discovered sooner'" and that the evidence "'is so material that it would probably produce a different verdict.'")(quoting United States v. Slutsky, 514 F.2d 1222, 1225 (2d Cir. 1975)).

Assuming, *arguendo*, that Petitioner presents a new claim from that addressed and rejected on appeal,[4] he fails to establish cause for not raising it on direct appeal. Indeed, between Petitioner's first and second trial, the Government disclosed what information it had regarding

---

[3] This rule does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 123 S. Ct. 1690, 1696 (2003)(A Section 2255 ineffective assistance of counsel claim is not barred even if not raised on direct appeal).

[4] This is a dubious position in this case. As discussed in the text, Petitioner has presented this argument before and it has been rejected each time. His "new evidence" is merely a feeble attempt to blow life in the losing claim using unsubstantiated conclusions and surmise. The affidavits of Shatima Turner and Junior Frederick, even if true, do not establish that the Government had information about Shatima Turner's drug dealings in November of 1996 when the case went to trial a second time. This is because there is a difference between suspecting that someone is selling drugs on a certain date, and learning later, through information obtained via an investigation, that the person was selling drugs on an earlier certain date. While the Government (or one of its agents) might have suspected, in the summer of 1996, that Turner was selling drugs, it might not have gained reliable information to that effect until the subsequent investigation began to unfold. Like many criminal investigations, Government investigators proceed on hunches that are sometimes later verified by additional evidence, such as testimony from cooperating witness who provide details about past activities. As explained by the Court in its March 11, 1998 Memorandum Decision & Order on Petitioner's Rule 33 motion, Government agents had an unconfirmed hunch about Turner's activities in 1996 (which they disclosed to the defense), but did not obtain reliable information about such activities until after the trial was concluded.

Turner's drug activities up to that date. See November 26, 1996 Trans., pp. 40-47 (discussing what use, if any, defendants could make of this information at trial).  In addition, in support of Petitioner's originally filed Section 2255 motion, he submitted an affidavit from Shatima Turner's mother, Yolanda Turner, dated March 29, 2000. Yolanda Turner attested that, at the time of the trial, the Assistant United States Attorney prosecuting the case for the Government "did in fact know that my daughter Shatima Turner was involved in additional activity and she told me herself that [the prosecuting attorney] warned her about such conduct."  Yolanda Turner Aff. ¶ 3 [dkt. # 7 in Sweat v. United States, 3:04-CV-849].  Putting aside the question of whether the information, if true, would support a Brady violation, it is clear that Petitioner possessed this information - or could have learned of it through reasonable diligence - before his direct appeal was exhausted. See Joyner II, 313 F.3d 40 (2d Cir. 2002).

The same could be said for the information from Junior Frederick. Assuming that Frederick's conclusion had some evidentiary impact, see fn. 4, *supra*, Petitioner could have easily obtained the information in 1997 when his plea was entered. The plea agreement was, and is still is, a public document, and the conclusions Frederick draws are based entirely upon information available long before Petitioner's appeal was exhausted.  Accordingly, Petitioner fails to establish cause for failing to present the claim on direct review.

Further, Petitioner fails to establish his actual innocence of the crime of conviction.  In order to establish "actual innocence," a movant must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998). Actual innocence means "factual innocence, not mere legal insufficiency." Id.  "The Supreme Court in Bousley also made clear that when a habeas petitioner is

7

required to meet the 'actual innocence' standard, he must satisfy a higher hurdle than the 'prejudice' prong of the cause and prejudice standard." <u>De Jesus v. United States</u>, 161 F.3d 99, 103 (2d Cir. 1998).

Petitioner has not directly asserted his factual innocence, but instead asserts a claim of legal insufficiency.  A claim of legal insufficiency will not serve to excuse a procedural default. <u>Freeman v. United States</u>, 2005 WL 1498289, at * 4 (E.D.N.Y. June 17, 2005)(citing <u>Bousley</u>, 523 U.S. at 622).  Further, having presided over the trial and having had the opportunity to hear the wealth of evidence presented against Petitioner, the Court finds no merit to any contention that Petitioner is actually innocent of the crime of conviction. <u>See</u> <u>United States v. Sapia</u>, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002).[5]  Over twenty witnesses were called on the government's case-in-chief, including Joyner, and Petitioner's guilt was well established.[6]  Consequently, the claim, even if "new," is procedurally barred.

Finally, and assuming arguendo that the claim is not procedurally forfeited, it fails on the merits. "[T]he Government's failure to disclose evidence that is materially favorable to the defense violates due process." <u>United States v. Rivas</u>, 377 F.3d 195, 199 (2d Cir. 2004)(citing <u>Brady</u>, 373 U.S. at 87). To violate <u>Brady</u>, "[t]he evidence at issue must be favorable to the accused, either

---

[5]  In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence.'" <u>United States v. Sapia</u>, 2002 WL 620483 at *4 (quoting <u>Stokes v. United States</u>, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001)).

[6]  The government called a total of twenty-three witnesses during petitioner's second trial. In the order they appeared, the government called: (1) Edwin Ramos; (2) William Little; (3) Archie Joyner; (4) Clarence D. Brown; (6) Philip Kane; (7) Tracey Corson; (8) Bridget Williams; (9) Michael Youmans; (10) Gordon Greene; (11) Richard Edwards; (12) Collin Jones; (13) Kevin Mickens; (14) Helena McFarlane; (15) Iashia Duncan; (16) Craig Twonbley; (17) Julie Gofkowski; (18) Yolanda Turner; (19) Shatima Turner; (20) Joseph Ashman; (21) Joseph Burke; and (23) Tracy Smith.

because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "Impeachment evidence is evidence 'having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.'" Rivas, 377 F.3d at 199 (quoting United States v. Avellino, 136 F.3d 249, 255 (2d Cir.1998)). To be material in the Brady analysis, the nondisclosure of the evidence must create "a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case (citing United States v. Bagley, 473 U.S. 667, 682 (1985)), or would have put the case in such a different light as to undermine confidence in the outcome." Rivas, 377 F.3d at 199 (citing Kyles v. Whitley, 514 U.S. 419, 434-35 (1995)).

Here, although Shatima Turner was a key witness against Petitioner, she was also cross-examined about her veracity and prior perjurious statements, see Joyner I, 201 F.3d at 82, and, as explained above, was but one of a bevy of witness who offered testimony against the Petitioner. Like in the case of United States v. Wong, 78 F.3d 73 (2d Cir. 1996), "defense counsel had sufficient ammunition concerning [the witness'] mendacity, interest, and bias as to justify the . . . conclusion that the undisclosed impeachment evidence ... was cumulative." Id. at 80.  Thus, the purported undisclosed Brady impeachment material "is the sort of cumulative impeachment material that is routinely held insufficient to warrant a new trial because it does not undermine the confidence in the verdict." Id. at 82 (interior quotation marks and citations omitted). The claim premised upon a purported Brady violation is, therefore, dismissed.

**B.  Perjured Testimony by Shatima Turner**

Petitioner next argues that his conviction should be vacated because the Government knowingly used perjured testimony from Shatima Turner.  In this regard, Petitioner points to Ms.

Turner's affidavit and argues that she lied on the witness stand when she testified: (1) that Petitioner had a gun on one occasion; (2) that the Government had not promised her any particular sentence for her testimony at trial; (3) that Petitioner, "along with others, utilized Ms. Vera Jeffrey's apartment in New York as a cutting mill;" (4) that her telephone conversations with Petitioner "were related to drug activity;" and (5) "that the drugs Anthony Danes (Haney) was arrested with were given to him by Mr. Sweat."  The Court will address these allegations *seriatim.*

The allegation of Turner's perjury regarding Petitioner's possession of a gun was addressed and rejected on appeal as a basis for upsetting the instant conviction. See Joyner I, 201 F.3d at 82.[7] That claim is both procedurally barred and without substantive merit.

With regard to the purported perjury related to a Government promise for a specific sentence, Turner's affidavit does not bear out this allegation. Turner asserts in her affidavit that she "agreed to testify against Mr. Sweat because [she] was promised leniency and the opportunity to keep [her] child."  S. Turner Aff. ¶ 9.  Petitioner asserts that this establishes that Turner lied when she was asked by the prosecutor at trial whether she had "been promised any sentence" and she replied "no."  Pet. Mem. L. p. 13 (citation to trial trans. omitted).  Assuming the truth of the

---

[7] In this regard the Second Circuit held:

Barrett and Sweat next argue that it must have been evident to the government that Turner perjured herself during the second trial.  We disagree.  Turner's testimony at the first trial that she did not see Barrett with a gun after Gillespie came to Choice's was not inconsistent with her testimony at the retrial that Barrett had a gun on the date that Gillespie came to the bar.  In any event, Turner explained on cross-examination that her failure at the first trial to mention that Barrett had a gun was due to her nervousness at the first trial--a not implausible explanation.  Even if her testimony was perjurious, however, cross-examination and jury instructions regarding witness credibility will normally purge the taint of false testimony. See United States v. Blair, 958 F.2d 26, 29 (2d Cir. 1992).  Here, Barrett fully cross-examined Turner about her allegedly perjurious statements, and the district court charged the jury on witness credibility, prior inconsistent statements, and on the jury's right to disregard false testimony. Her testimony did not, therefore, taint the trial.

Joyner I, 201 F.3d at 82.

affidavit, perjury at trial is not established.  It was well known that on March 18, 1996, Turner pled

guilty to certain crimes pursuant to a plea agreement. See dkt. entry # 674 in United States v. Joyner,

95-cr-232 (N.D.N.Y.).  Certainly, Turner's decision to plead guilty and cooperate with the

Government was made so that she could obtain leniency and, possibly, avoid a lengthy prison

sentence that would have prevented her from being with her child. There is no indication - in the

affidavit or otherwise - that she was promised any particular sentence by the Government, nor could

the Government have made such a promise under the conditions of Turner's plea.  The claim in this

regard fails on the merits.

Assuming, *arguendo*, that Turner committed perjury at trial in the other referenced respects

(i.e. on testimony related to interactions with co-conspirators), Petitioner has failed to demonstrate

cause for failing to present this "new evidence" on direct appeal.  There is no explanation why

Turner's current claims could not have been explored and her lies exposed while the case was on

direct appeal.  Therefore, the claim is procedurally barred.

Further, Petitioner has failed to establish that the Government was aware of the perjury

regarding her interactions  with other co-conspirators, or that the nature of the perjury would have

changed the outcome of the case. See United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991);[8]

---

[8] In Wallach, the Court of Appeals stated "[w]hether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury" at the time of trial. Wallach, 935 F.2d at 456   If the defendant demonstrates that the prosecution knew or should have known of the perjury, then the court will set aside the conviction "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. (citation omitted).  If, however, the government is not shown to have been aware of the perjury, a new trial is warranted only if (1) the testimony was material, and (2) " the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." Id. (citation omitted).

Freeman, 2005 WL 1498289, at *4;[9] see also Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003)(Generally, in order to challenge a conviction on the basis of perjured testimony, a petitioner must show that "the testimony was material and ... but for the perjured testimony, the defendant would most likely not have been convicted."). Other than purely conclusory allegations, Petitioner provides no basis to conclude that the Government was, or should have been, aware that Shatima Turner committed perjury at trial (if, in fact, she did) in these respects. See Ortega, 333 F.3d at 107 (The Second Circuit has long been of the view that a recantation of testimony must be "looked upon with the utmost suspicion.")(citations omitted). Indeed, as discussed on Michael Barrett's Section 2255 motion, Ms. Turner purportedly lied because she had a romantic interest in Barrett and felt "scorned" when Mr. Barrett rebuked her affections. See Barrett v. United States, 2005 WL 1520849, at *6 (N.D.N.Y. June 27, 2005).[10]  However, there is no evidence that *anyone* was aware of these

---

[9] In Freeman, the Eastern District explained

A Section 2255 motion is not a vehicle for rearguing the credibility of witnesses." Conteh v. United States, 226 F.Supp.2d 514, 519-20 (S.D.N.Y. 2002). Moreover, "a showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief." Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003). Petitioner has not provided any evidence that the government knew about the alleged perjury (if, indeed, the testimony was perjured). Where there is no showing that the government knew about the alleged perjury, "a new trial is warranted only if (1) the testimony was material, and (2) the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." Conteh, 226 F. Supp.2d at 519-20 (internal citations and quotations omitted).

[10] Barrett raised the perjury of Ms. Turner in the context of an ineffective assistance of counsel argument. In addressing that argument, this Court wrote:

Petitioner also impliedly asserts that counsel was constitutionally ineffective for failing to ferret out that Shatima Turner testified falsely because she felt she had been romantically rebuked by Petitioner. In this regard, Turner asserts in an affidavit that "[t]he testimony I gave concerning Mr. Barrett conformed to what I felt the government wanted to hear." S. Turner Aff. ¶ 4. Turner attests that she testified as did because she had "feelings" for Petitioner and felt "doubly scorned" when he "left 'Choices' to open a restaurant owned by his wife." Turner Aff. She contends that because of these feelings, she "tried to harm Mr. Barrett in any way, and the trial gave me the opportunity to do so." More specifically, Turner avers that she lied on the witness stand when she testified (1) that "Ms. Gloria" was a courier for Petitioner on occasion, (2) that Jeffery's apartment was used as a "cutting

(continued...)

motivations when Ms. Turner took the witness stand, and, therefore, there is no evidence that the Government was aware that Turner was not being truthful. Id. ("First, assuming *arguendo* that Turner committed perjury for the reasons asserted, there is no indication that anyone, including counsel, was even remotely aware of these motivations at the time of trial."). Consequently, in order to be afforded relief on this motion, Petitioner must demonstrate that the nature of the perjury would have changed the outcome of the case. Ortega, 333 F.3d at 108;  Wallach, 935 F.2d at 456.

However, "Petitioner cannot meet his burden of demonstrating that 'but for the perjured testimony, [he] would most likely not have been convicted.'" Freeman, 2005 WL 1498289, at *5 (quoting Conteh, 226 F. Supp.2d at 519-20). Assuming a*rguendo* that Turner was lying when she testified as she did about the gun, Jeffery's apartment being used as a cutting mill, the nature or her conversations with Petitioner, and the source of Anthony Danes' drugs, there was still a wealth of evidence upon which to convict Petitioner of the CCE count. See Joyner I, 201 F.3d at 82;  Barrett, 2005 WL 1520849, at *7;  March 11, 1998 Mem. Dec. & Ord. in 95-cr-232.  The Court is not "left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." Freeman, 2005 WL 1498289, at * 9.  Therefore, the claim based upon the purported use of perjured testimony is dismissed.

## C. Ineffective Assistance of Counsel

Next, Petitioner claims that his trial counsel was constitutionally ineffective because he failed to interview and call several witnesses who would have purportedly provided exculpatory testimony. In this regard, Petitioner alleges that counsel failed to interview and call Stephen Brown,

---

[10](...continued)
mill," and (3) that the drugs seized from "Mr. Anthony Danes (Haney)" belonged to Petitioner.

13

Anthony Danes, and Kevin Rowe who would have testified that they "did not sell drugs for, nor were their activities directed by" Petitioner. Sweat Aff., p. 3.[11]

In order to state a cognizable Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to ...defendant." United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001)(quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment.'" Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000)(quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985)(Petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.")(citing Strickland, 466 U.S. at 688-89).   Furthermore, the Court must evaluate counsel's performance from his perspective at the time of the alleged errors and in the same circumstances. Garcia v. United States, 15 F. Supp.2d 367, 379 (S.D.N.Y. 1998)(citing Strickland, 466 U.S. at 689).

---

[11] Mr. Brown submitted an affidavit in this case indicating, *inter alia*, that although he was involved in criminal drug activities, he did not sell drugs for Mr. Sweat.  Although Mr. Danes and Mr. Rowe did not submit affidavits for Mr. Sweat, they submitted similar affidavits for Sweat's co-defendant- Michael Barrett - in Barrett's Section 2255 case.

To satisfy the second prong of <u>Strickland</u>, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

"Habeas claims based on complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified [to] are largely speculative.'" <u>Lou v. Mantello</u>, 2001 WL 1152817, at *10 (E.D.N.Y. Sept. 25, 2001)(interior quotation and citation omitted).  Much of what these witnesses supposedly would have testified to is based upon nothing more than pure speculation by Petitioner. Such speculation is insufficient on this motion. <u>See</u> <u>United States v. Vargas</u>, 920 F.2d 167, 170 (2d Cir. 1990)(petitioner's affidavit making allegations in a "conclusory fashion" failed to demonstrate that counsel's decision not to call a witness was unreasonable), <u>cert. denied</u>, 502 U.S. 826 (1991); <u>Muhammad v. Bennett</u>, 1998 WL 214884, at *1 (S.D.N.Y. Apr. 29, 1998)("petitioner's speculative claim about the testimony of an uncalled witness" is insufficient to show ineffective assistance of trial counsel); <u>Angel v. Garvin</u>, 2001 WL 327150, at *8 (S.D.N.Y. April 3, 2001)(recognizing that a habeas petition may be denied when the allegations are speculative or conclusory).

Assuming these witnesses could have been located at the time and testified in the manner that Petitioner asserts, Petitioner's claim nevertheless fails under both prongs of the <u>Strickland</u> test. An attorney's decision "whether to call specific witnesses--even ones that might offer exculpatory evidence--is ordinarily not viewed as a lapse in professional representation." <u>United States v. Best</u>, 219 F.3d 192, 201 (2d Cir. 2000); <u>see also</u> <u>United States v. Schmidt</u>, 105 F.3d 82, 83 (2d Cir.

15

1997)(The decision of whether or not to call a particular witness is a matter of trial strategy which the courts will generally not second guess.); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.)("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."), cert denied 484 U.S. 958 (1987); United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999). There could have been any number of strategic reasons for not calling these witnesses, including, but not limited to, that the witnesses might have offered information that was more damaging than helpful to the defense. For instance, both Brown and Danes admitted selling drugs but merely assert that they did not do so for Petitioner or for co-defendant Barrett. Rowe also has been involved in drug activities at the juice bar where Petitioner operated. See Barrett's Traverse, dkt. # 17, p. 3 ("Each of these [people who supplied] affidavits ("C"-"F") were named co-conspirators who, as the government claimed[,] were supervised by Michael Barrett and sold drugs at Choices under his agreement with Joyner.") in 04-CV-848. An attorney representing a defendant charged with both CCE and conspiracy drug counts might well have thought it imprudent to call witnesses, some of whom were admitted drug dealers, especially if their sales occurred in the establishment where Petitioner was alleged to have conducted his drug operation.

Further, the purported testimony of these witnesses would not have necessarily exonerated Petitioner.  It merely would have amounted to testimony that the witnesses were not aware of Petitioner's activities in selling drugs or managing others in the sale of drugs, but it would not have ruled out the possibility that Petitioner engaged in such activities without these witnesses knowing about it. Counsel might well have concluded that the risk of putting these witnesses on the stand outweighed any minimal benefit that they could have provided.

16

As to the potential to impeach Shatima Turner, the record reflects that counsel did attack Turner's credibility on another basis during the trial, see Joyner I, 201 F.3d at 82 (quoted at fn. 7, *supra*), and the concerns of opening a Pandora's Box by putting other drug dealers on the stand to attack her on other grounds seems to be a sound strategic decision under the circumstances, especially in light of the strength of the government's case (discussed *infra*). Indeed, the government's case was built around testimony from Joyner himself. See Joyner I, 201 F.3d at 65 (referring to Joyner as "the government's key witness").

Further, and assuming that the witnesses would have testified as they now assert, see Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990)(holding that to prove prejudice from counsel's failure to call witnesses, a petitioner must show not only that the testimony would have been favorable, but also that the witnesses would have voluntarily come forth to testify), Petitioner cannot demonstrate that *but for* the absence of their testimony, the result of the trial would have been different. Strickland, 466 U.S. at 694; see Slevin v. United States, 1999 WL 549010, at *5 (S.D.N.Y. 1999)(a habeas petitioner must show how counsel's failures prejudiced the outcome of the trial), aff'd, 234 F.3d 1263 (2d Cir. 2000). While these witnesses might have supported Petitioner's defense in some part, or impeached Shatima Turner's testimony to some degree, there was a plethora of evidence that supported his guilt. Over twenty witnesses were called on the government's case-in-chief, including Joyner.  To now assume that the jury would have disregarded all of this testimony and unequivocally believed Petitioner's proffered witnesses is wholly speculative and unsupported. Based on the record before this Court, Petitioner cannot show that, but for testimony from these witnesses, the result of his trial would have been different. Therefore, the claim fails under both prongs of Strickland.

Finally, Petitioner's generalized and vague claims of counsel's ineffectiveness (adopting co-defendant Barrett's Section 2255 arguments) are insufficient to state a Strickland claim. See Slevin v. United States, 1999 WL 549010 at *5 (S.D.N.Y. July 28, 1999)("Petitioner's conclusory allegations that counsel evinced 'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the trial would have been different. Petitioner has not elaborated on how counsel's alleged general lack of preparation prejudiced the outcome of his trial. Accordingly, such purported lack of preparation cannot be deemed ineffective assistance of counsel."), aff'd, 234 F.3d 1263 (2d Cir. 2000); Vasquez v. United States, 1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997)("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, ... '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel...."); Sirotnikov v. United States, 1998 WL 770557, at *4 (S.D.N.Y. Nov. 2, 1998)("Petitioner's naked assertion that his trial counsel 'failed to adequately perform pretrial research and investigation,' does not establish ineffective assistance of counsel."); Parnes v. United States, 1995 WL 758805, at *3 (S.D.N.Y. Dec. 21, 1995)("[V]ague allegations do not permit the Court to conclude that the alleged errors of Petitioner's counsel fell below 'prevailing professional norms'.... Accordingly, the Court rejects Petitioner's claim that he received ineffective assistance of counsel."); Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995)(mere conclusory allegations that counsel was ineffective fails "to establish that his counsel's performance was deficient [and] .... fails to overcome the presumption [under Strickland] that counsel acted reasonably...."); Hartley v. Senkowski, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992)("In light of this demanding [Strickland] standard, petitioner's

vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight.").

## III. CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and his petition is **DISMISSED**.


**IT IS SO ORDERED**

DATED:November 29,2005

Thomas J. McAvoy
Senior, U.S. District Judge